JANUARY TERM, 1882, No. 43.          MAY 17TH, 1882.

## Steinman *et al.* *versus* Miller *et al.*

1. It is a fatal defect in a mechanic's lien, filed against nine lots, and the houses erected on them, that the name of the owner of two of them does not appear in the lien.

2. This defect is not cured by the fact that the contractor is named in the lien as owner, or reputed owner, and is the owner of seven of the lots.

3. Houston's Appeal, 6 W. N. C., 162; and Barclay's Appeal, 11 W. N. C. 359, followed.

Before SHARSWOOD, C. J.; and MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT, and GREEN, JJ.

Error to the Court of Common Pleas of *Lancaster County.*
*Scire facias sur* mechanic's lien, by George M. Steinman & Co., against John J. Miller, owner, or reputed owner, and contractor, with notice to Jacob Griel, J. P. Stormfeltz, Thomas Thurlow, and Mrs. Nancy Albert, terre tenants.

Upon the trial in the Court below, before LIVINGSTON, J., the following facts appeared:

On the 26th of October, 1877, Jacob Griel and John J. Miller entered into a written agreement, by the terms of which Miller agreed to build on Lemon Street, Lancaster, Pa., nine two-story houses on the ground of Griel, and Griel agreed " to grant and convey unto said John J. Miller, his heirs and assigns, clear of all incumbrances, except the mortgage hereinafter mentioned, seven of these nine lots of ground above mentioned, including said corner lot on Pine Street, said Miller to have the choice of lots."

The plaintiffs, between December 19th, 1877, and March 26th, 1878, inclusive, furnished materials to the amount of $320.35, which were charged to John J. Miller " for Lemon Street houses." There was evidence that they were furnished on the credit of the buildings.

April 23d, 1878, the plaintiffs filed an unapportioned lien for the amount, naming John J. Miller as " owner, or reputed owner, and contractor," against the nine houses and lot of ground, setting forth, " of which the said John J. Miller was or is the owner, or reputed owner, and the architect, constructor, and builder thereof, at whose instance and request the said hardware, paints, oils, etc., were done, furnished, and delivered as aforesaid."

Upon this lien a *scire facias* and an alias *scire facias* were issued. January 24th, 1882, the Court entered a judgment of nonsuit, and subsequently discharged a rule to show cause why the judgment of non-suit should not be stricken off.

The plaintiff then took a writ of error, assigning as errors

that the Court erred in entering the nonsuit and in not striking it off.

*H. M. North*, for plaintiff in error.

If Miller was either owner, or reputed owner, the statute is complied with. He was not only reputed owner, but owner. He had an equitable interest under articles of agreement: Gaule *v.* Bilyeau, 1 Casey, 521; Christine *v.* Manderson, 2 Barr, 363.

The plaintiffs, in filing their lien, could not make the election for Miller and leave out two houses that Miller afterwards might elect to take. The right way for the plaintiffs to do was as they did, file their lien against Miller as owner, or reputed owner; and the production of the written agreement did not prove that Miller was not the reputed owner, and there was oral proof that he was the reputed owner, and, as he had an interest and an estate, the quantum or extent of it was immaterial: Sullivan *v.* Johns, 5 Wharton, 366; Van Billiard *v.* Nace, 1 Grant, 233.

*W. A. Atlee, A. C. Reinœhl, W. A. Wilson,* and *B. C. Kready,* for defendants in error.

Not having exercised due care, and having filed an unapportioned lien against adjoining houses, owned by different persons, one of the owners not being named in the lien, the Court was right in entering a nonsuit: Kerbaugh *v.* Henderson, 3 Phila., 17; Mersereau *v.* Kohler, 2 Leg. Opin., 133; Barclay's Appeal, 11 W. N. C., 359; Houston's Appeal, 6 W. N. C., 162.

OCTOBER 2D, 1882.—The opinion of the Court was delivered by GREEN, J.

We think this case is determined by our ruling in the cases of Houston, Smith & Co.'s Appeal, 6 W. N. C., 162; and Barclay's Appeal, 11 W. N. C., 359.

In both of them we held that the omission of the name of the owner from the claim was a fatal defect, and that this defect was not cured by filing the lien against one who was a contractor, and naming him also as reputed owner. There is no question in the present case that Miller was the contractor, and also that he was owner of a part of the property in question. But he was never the owner and had no estate or interest in two of the nine lots, against which, with the buildings on them, the lien was filed. The agreement between Griel, the owner, and Miller, the contractor, stipulated for the conveyance to Miller of seven of the lots as the consideration principally for the erection of

[Appeal of W. H. Ainey *et al.*]

the houses. The other two lots remained in the ownership of Griel, and, as the lien included them, it was necessary that he should be named as owner, and have notice as such of the proceedings.

In McCay's Appeal, 1 Wr., 125, we held that the omission of the name of the contractor, when the work was done under a contract with one who was not the owner, was a fatal defect.

The reason given was that the name of the contractor is required by the statute to appear in the claim, and the absence of it is therefore fatal.

The same requirement is contained in the statute as to the name of the owner, and the omission of his name is equally fatal. The case of Christine *v.* Manderson, 2 Barr, 363, is not applicable, as it was expressly held to arise under the Act of 1806, which does not require the name of either the owner or contractor to appear in the lien. The objection to the *sci. fa.*, under the Act of 1808, that it did not contain the name of the owner, was held unavailing when made by the contractor, who was not the owner: Gaule *v.* Bilyeau, 1 Cas., 521, has no application, as it only relates to the interest of the tenant in the land under the lease from the owner, and on that subject there is no controversy in the present case. Miller had an undoubted estate in seven of the lots under the agreement between him and Griel; and his description as owner, or reputed owner, is a full satisfaction of the requirement of the statute as to those lots. But, as to the other two lots, he had no estate or interest in them; and his actual or reputed ownership of the seven lots could not embrace them except at the peril of subjecting the property of the owner of the two lots to judicial proceedings and sale without his knowledge.

Judgment affirmed.